**IROQUOIS INDUSTRIES, INC.,**
**Plaintiff-Appellant,**

**v.**

**SYRACUSE CHINA CORPORATION,**
**William R. Salisbury, Foster T. Rhodes,**
**Malcolm E. Kelley, James Salisbury**
**Pass, Robert M. Salisbury, Harold C.**
**Brown & Co., Inc., Harold C. Brown, C.**
**Herbert Feuchter, and Towle Manufacturing Company, Defendants-Appellees.**

**No. 428, Docket 32984.**

United States Court of Appeals
Second Circuit.

Argued April 21, 1969.

Decided Nov. 3, 1969.

Frank G. Raichle, Buffalo, N. Y. (Raichle, Banning, Weiss & Halpern, Buffalo, N. Y., Ralph L. Halpern, Buffalo, N. Y., on the brief), for plaintiff-appellant.

George H. Bond, Jr., Syracuse, N. Y. (Bond, Schoeneck & King, Charles T. Beeching, Jr., Syracuse, N. Y., on the brief), for defendants-appellees Syracuse China Corporation, William R. Salisbury, First Trust & Deposit Co. and Josephine Rhodes, as Executors of Estate of Foster T. Rhodes, Malcolm E. Kelley, James Salisbury Pass, Robert M. Salisbury.

Hilary P. Bradford, Buffalo, N. Y. (Cohen, Swados, Wright, Hanifin & Bradford, F. Harris Nichols, Buffalo, N. Y., on the brief), for defendants-appellees Harold C. Brown & Co., Inc., Harold C. Brown and C. Herbert Feuchter.

Hugh McM. Russ, Sr., Buffalo, N. Y. (Hodgson, Russ, Andrews, Woods & Goodyear, John J. Cooney, Stephen Kellogg, Buffalo, N. Y., on the brief), for defendant-appellee Towle Manufacturing Co.

Philip A. Loomis, Jr., Gen. Counsel, Walter P. North, Associate Gen. Counsel, Jacob H. Stillman, Asst. Gen. Counsel, Alan Blank, Atty., Washington, D. C., for Securities and Exchange Commission, amicus curiae.

Before LUMBARD, Chief Judge, ANDERSON, Circuit Judge, and WYATT, District Judge.*

WYATT, District Judge:

The principal question, an important one, raised by this appeal is the extent to which Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78a and following; the "1934 Act") is applicable in tender offer situations. Closely related is a question as to the continuing vitality of the decision of this Court in Birnbaum v. Newport Steel Corp., 193 F.2d 461 (2d Cir.), cert. denied 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952).

The rule laid down in *Birnbaum* is that a civil action under Section 10(b) of the 1934 Act (15 U.S.C. § 78j(b)) may be maintained only by a purchaser or seller of securities. We find no reason to deviate from that rule in the present case. The decision below is therefore affirmed.

Iroquois Industries, Inc. (Iroquois), the appellant, wanted to buy 50,000 shares of common stock of Syracuse China Corporation (Syracuse China), evidently to secure working control of Syracuse China. Iroquois made a public offer to purchase the shares and invited stockholders to tender their shares for purchase. The management of Syracuse China resisted the tender offer and it failed. Iroquois then brought this action, charging violations of Section 10 (b) and other sections of the 1934 Act.

Judge Henderson in the Western District of New York granted motions of the defendants and, with an unreported memorandum opinion, dismissed the action as to all defendants for failure of the complaint to state a claim upon which relief can be granted (Fed.R.Civ.P. 12 (b) (6)). We agree that the action should be dismissed.

The complaint has five counts, each purporting to state a separate claim. The averments of the complaint for present purposes must be assumed to be true.

Jurisdiction of the first three claims is rested on Section 27 of the 1934 Act (15 U.S.C. § 78aa); there is no diversity jurisdiction of such claims. The fourth claim is against defendant Towle Manufacturing Company (Towle) only; there appears to be diversity jurisdiction as to this claim. The fifth claim is said to be within the pendent jurisdiction principle. Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933).

### THE FIRST COUNT

The first count avers the basic factual pattern applicable to all counts.

Plaintiff Iroquois is a Delaware corporation with its principal place of business in Buffalo.

---

* Of the Southern District of New York, sitting by designation.

Syracuse China is a New York corporation doing business in Syracuse. Syracuse China has outstanding 113,000 shares of common stock; there are some 600 stockholders. The individual defendants, except Brown and Feuchter, are officers or directors or both of Syracuse China. Defendant Harold C. Brown & Co., Inc. (Brown Inc.) is an investment banking house in Buffalo. The individual defendants Brown and Feuchter are connected with Brown Inc. Defendant Towle is a Massachusetts corporation which also does business in New York City.

Iroquois invited stockholders of Syracuse China to tender their shares for purchase and Iroquois agreed to purchase all shares tendered, up to 50,000 shares.

The defendants conspired together to prevent Iroquois from obtaining shares under the tender offer and did prevent Iroquois from obtaining shares. The defendants retained professional solicitors, at the expense of Syracuse China, who persuaded stockholders not to tender their shares. The defendants themselves asked stockholders not to tender. Letters were written by defendants to the stockholders, falsely stating that Syracuse China was negotiating a merger, that negotiations for a merger with Towle were continuing, and that details of the merger would shortly be submitted; in fact, there was never any intention to conclude any merger with Towle but the talk was to mislead and to interfere with the tender offer. The letters of Syracuse China were false and misleading. The defendants advised stockholders that members of management would buy their shares if any stockholder wanted to sell; in fact, members of management did purchase a substantial number of shares. Towle aided the other defendants by conducting sham merger negotiations, knowing that no merger was intended. Brown Inc. and its officers and employees refused to advise the customers of Brown Inc. of the tender offer of Iroquois but instead advised them to sell their shares to members of the management of Syracuse China.

The claim in this count is that the acts of defendants were in violation of Section 10(b) of the 1934 Act and of Rule 10b-5 of the Securities and Exchange Commission (the "Commission") thereunder. The cited statute and Rule make it unlawful to employ fraud "in connection with the purchase or sale of any security."

We may put to one side most of the averments of the first count. The wrongful use of the funds of Syracuse China to defeat the tender offer might give rise to a derivative action in equity to recover for Syracuse China the amount of those funds. This, however, is not such an action and if it were, there would be no jurisdiction to entertain it because there is no diversity of citizenship.

■ There remain averments which are appropriate to a Section 10(b) claim, namely, that there were untrue statements of material facts by defendants to stockholders of Syracuse China.

The history of Rule 10b-5 has been set out in the *Birnbaum* opinion. A summary will suffice here.

The Securities Act of 1933 (15 U.S.C. § 77a and following; the "1933 Act") contained a provision (Section 17(a); 15 U.S.C. § 77q) making it unlawful to employ fraud (including half-truths) "in the offer or sale of any securities." This applied only to fraud on *purchasers* of securities.

The 1934 Act contained a broader provision, Section 10(b), conferring rule making power on the Commission in respect of fraud "in connection with the *purchase* or *sale* of any security * * *" (emphasis supplied). The rule making power thus included fraud on *sellers* of securities.

No rule was adopted for some years and as long as there was no rule, fraud on a purchaser was actionable under the 1933 Act but fraud on a seller was not actionable under either the 1933 Act or 1934 Act.

The Commission in May 1942 acted to close this loophole by adopting Rule 10b-5. This rule makes it unlawful to employ

fraud (including half-truths) "in connection with the *purchase* or *sale* of any security * * * " (emphasis supplied), thus making it unlawful to employ fraud on *sellers* of securities as well as on purchasers.

In the light of this history, this Court decided in *Birnbaum* that Congress meant Section 10(b) to be "directed solely at that type of misrepresentation or fraudulent practice usually associated with the sale or purchase of securities" and that Rule 10b-5 "extended protection only to the defrauded purchaser or seller" (193 F.2d at 464). Professor Loss in 1961 gave his approval to this view as "basically correct" (3 Loss, Securities Regulation (hereafter "Loss") (2d ed. 1961) 1469) and has not since changed his mind (6 Loss (Supp.1969) 3617).

In *Birnbaum*, plaintiffs were minority stockholders of Newport Steel Corporation (Newport). Their complaint showed the following situation. Feldmann owned enough stock of Newport to have voting control and was an officer and director of Newport. Follansbee Steel Corporation and Newport were negotiating for a merger which would have been highly profitable for stockholders of Newport. Feldmann rejected the merger and instead sold all his stock to Wilport Company (Wilport) for twice its market value. Wilport had been formed by a group of manufacturers who, with control of Newport, could secure its steel during a then critical shortage; this explained the premium paid. In letters which the defendants sent to stockholders of Newport both before and after the sale by Feldmann, there were misrepresentations and half-truths said to be in violation of Rule 10b-5. This Court held that, because the plaintiffs had not been either purchasers or sellers of Newport stock, they were not within the protection of Section 10(b) and that the complaint failed to state a claim. Dismissal of the action was affirmed.

Iroquois is not here complaining that it was misled by the acts of defendants as to any purchases or sales by it of Syracuse China stock; indeed, its basic complaint is that, because of the acts of defendants, it could not purchase such shares. In effect, Iroquois complains of fraud by defendants on the stockholders of Syracuse China who sold to the management of Syracuse China or otherwise refused to tender to Iroquois.

Appellant Iroquois and the Commission (as a friend of the Court) in substance invite us to overrule *Birnbaum*; they assert that its reasoning has already been weakened by several decisions of this Court. We do not so read the decisions and we do not believe that "the purchaser-seller limitation" of *Birnbaum* "has been relaxed" by later decisions of this Court, as the Commission contends.

In Vine v. Beneficial Finance Co., 374 F.2d 627 (2d Cir.), cert. denied, 389 U.S. 970, 88 S.Ct. 463, 19 L.Ed.2d 460 (1967), plaintiff owned shares in corporation A. Corporation B wanted to secure enough stock of A so that A and B could be merged. B made an offer to buy the stock of A and by fraudulent representations obtained 95% of such stock. Plaintiff did not tender his stock to B. A and B were then merged. This merger caused A (and its shares) to cease to exist. Plaintiff as to his A shares had only two alternatives: either to secure the fair value of those shares by judicial appraisal or to secure such value from B by agreement. An action under Section 10 (b) was held to lie because by deceiving the other A stockholders, B forced plaintiff to become in substance a seller. It was expressly held that plaintiff was thus a "seller under the Act" and that defendant B was "a purchaser of plaintiff's stock" (374 F.2d at 635). The Court found it "unnecessary" to consider an "interesting contention" of the Commission that a plaintiff in a Section 10(b) action need not be either a purchaser or a seller.

Again in A. T. Brod & Co. v. Perlow, 375 F.2d 393 (2d Cir. 1967), a customer of a broker by fraud caused the broker to purchase securities from third persons. It was held that the broker was a "purchaser of the securities" (375 F.2d at 397) and that as such it could sue its

customers who had placed fraudulent orders for stock. The Court also noted that a criticism by the Commission of the interpretation in *Birnbaum* as "too narrow" would not be considered because the broker "is clearly a purchaser of securities" (375 F.2d at 397, fn. 3).

In these two cases, *Vine* and *Brod*, plaintiff was found to be a "seller" or a "purchaser" of shares; the fraud alleged was in connection with such sale or purchase. The two cases thus show no retreat from the proposition that a claim under Section 10(b) must relate to a purchase or sale as to which plaintiff was defrauded. We are unable, therefore, to accept the conclusion that the two cases "seriously challenge, if not overrule, [the decision] in Birnbaum * * *." Entel v. Allen, 270 F.Supp. 60, 69 (S.D.N.Y. 1967). The two cases do show that for a claim under Rule 10b-5 the purchase or the sale need not be between plaintiff and defendant, that there need not be "privity" between plaintiff and defendant. 3 Loss 1767–1771. This had been implicit, however, in the first decision of this Court that a violation of Rule 10b-5 gave rise to civil liability. There, purchasers of *common* stock on the market (not from defendants) were held to have a claim under Rule 10b-5 against the corporation, an underwriter and others based on fraud in a prospectus and registration statement for *preferred* stock. Fischman v. Raytheon Mfg. Co., 188 F.2d 783 (2d Cir. 1951). After a somewhat confusing decision, Joseph v. Farnsworth Radio & Television Corp., 198 F.2d 883 (2d Cir. 1952) (dissenting opinion by Frank, J.), it has become clear by now, attested by *Vine* and *Brod* (among other decisions), that liability under Rule 10b-5 does not depend on a securities transaction between plaintiff and defendant. 3 Loss (2d ed. 1961) 1767–1771, 6 Loss (Supp.1969) 3890–3897. This has nothing whatever to do with the *Birnbaum* rule, that liability under Rule 10b-5 does depend on a purchase or a sale by plaintiff, as to which purchase or sale there is a claim of fraud.

In Mutual Shares Corp. v. Genesco, Inc., 384 F.2d 540 (2d Cir. 1967), Genesco had made tender offers for stock of Kress in the period July–October 1963. As a result of these tender offers and of a purchase of a large block of stock, Genesco obtained about 94% of the Kress stock. Beginning November 15, 1963 plaintiffs *bought* shares of Kress. Plaintiffs commenced their action in November 1966. Their claim under Section 10(b) was (1) that there was fraud by Genesco in its offers to purchase the stock of Kress and (2) that after obtaining control of Kress in October 1963 Genesco manipulated the market price of Kress stock by keeping Kress dividends low so that Genesco could buy more Kress stock at depressed prices. Plaintiffs sought damages and an injunction against continuance of the manipulative scheme. It was held that plaintiffs had no claim for damages under Section 10 (b) because no tender offers were made to them and they did not sell Kress stock to Genesco or to anyone else; they bought Kress stock. Plaintiffs, however, were held entitled to injunctive relief against the scheme to manipulate the market price of Kress stock; they were permitted thus to aid in the enforcement of the 1934 Act.

The decision in Greenstein v. Paul, 400 F.2d 580 (2d Cir. 1968), only about a year ago, followed *Birnbaum* as "still the rule" in this Circuit "at least insofar as actions for damages are concerned" (400 F.2d at 581). Plaintiff was the owner of stock of Corporation A. Eighty per cent of the stock of A was owned by Corporation B. The complaint charged a violation of Rule 10b-5 in that defendants, officers and directors of both A and B, had conspired to divert the assets of A to B, depressing the market price of the stock of A and enabling defendants to purchase at depressed prices the shares of A owned by the minority group. Plaintiff, however, had not sold his shares of A. Dismissal of the complaint was affirmed on the strength of the *Birnbaum* rule. The Court said:

"It has long been the rule in this circuit that to maintain an action under § 10(b) of the Act and Rule 10b-5 of the Securities and Exchange Com-

mission the plaintiff must have been a seller of the stock involved. Birnbaum v. Newport Steel Corp., 193 F.2d 461 (C.A.2, 1952), cert. denied 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952). Although criticized, Entel v. Allen, 270 F.Supp. 60, 70 (S.D.N.Y., 1967), it is still the rule at least insofar as actions for damages are concerned."

The *Birnbaum* rule recognizes the policy of Congress in enacting Section 10(b) and of the Commission in adopting Rule 10b-5, namely, the protection of defrauded purchasers and sellers. It is not the province of the courts to extend Section 10(b) to apply to transactions not intended to be covered by Congress. We do well to heed the words of Mr. Justice Black, writing for the Court in a case about another section of the 1934 Act, Blau v. Lehman, 368 U.S. 403, 413, 82 S.Ct. 451, 457, 7 L.Ed.2d 403 (1962):

> "Congress can and might amend [the Act] if the Commission would present to it the policy arguments it has presented to us, but we think that Congress is the proper agency to change an interpretation of the Act unbroken since its passage, if the change is to be made."

■ That the conduct averred in any given case may be reprehensible does not mean that a federal remedy must be furnished by judges. The remedy in many cases may be found in the state courts which in New York, at least, afford redress as a "prima facie tort" for any wilful harm to the plaintiff. Advance Music Corp. v. American Tobacco Co., 296 N.Y. 79, 84, 70 N.E.2d 401, 403 (1946). As Judge Anderson has recently said: " * * * all rights existing under State law are not also federal rights carrying a federal remedy." Church v. Hegstrom, 416 F.2d 449, 451 (2d Cir., October 9, 1969). If there is to be a federal remedy, it is the Congress which must create it. Indeed in the very area of the case at bar, tender offers, Congress last year adopted, effective July 29, 1968, amendments (sometimes called the "Williams Bill") to add provisions in respect of tender offers to Sections 12, 13 and 14 of the 1934 Act. The amendments, among other things, added to Section 14 a new subdivision (e) reading as follows (15 U.S.C. § 78n(e)):

> "It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or to engage in any fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation."

There was an informative House Report on the bill amending Section 14 of the 1934 Act (H.R.Rep. No. 1711, 90th Cong.2d Sess. (1968); 1968 U.S.Code Cong. and Admin.News, pp. 2811–2823). This Report noted that tender offers had become an increasingly favored method for taking over control of publicly held corporations; that, because then existing laws had no disclosure requirements for tender offers, stockholders of the target corporation often did not have adequate information to decide whether to tender their shares or not; that this contrasted with disclosure requirements applicable to exchange offers and to proxy fights; that the management of the target corporation, in resisting the tender offer, might repurchase for the corporation its own shares; and that then existing law contained no disclosure requirements in connection with such repurchases. The Williams Bill was reported favorably in order that, by its amendments to the 1934 Act, gaps in the securities laws could be corrected.

That Congress enacted the new Section 14(e) to prohibit fraud by "any person" in respect to tender offers is at least an indication that in tender offer contests such as that at bar there was no standing to sue under Rule 10b-5 by either the tender offeror or by the target corporation. Judge Friendly has recently refer-

red to new Section 14(e) as follows (Electronic Specialty Co. v. International Controls Corp., 409 F.2d 937, 940 (2d Cir. 1969; emphasis supplied)):

"In effect this applies Rule 10b-5 both to the offeror and to the opposition— very likely, *except perhaps for any bearing it may have on the issue of standing*, only a codification of existing case law."

And Judge Feinberg noted the introduction in Congress of the tender offer legislation with those words (Mutual Shares Corp. v. Genesco, Inc., above cited, at 544):

"Use of a tender offer by an outsider to obtain control of a publicly-held corporation is a fairly recent development. This means of corporate takeover has become increasingly popular, and has led to demands for legislative regulation to prevent abuses. Bills have been introduced in Congress designed to achieve this end. While not conclusive, this legislative activity at least indicates the conviction of many that existing statutes do not adequately cover the field. Indeed, the chairman of the Commission has stated, albeit not in his official capacity, that 'the bills now pending before Congress would fill a hiatus.' "

We adhere to the result and the reasoning of *Birnbaum.* Dismissal of the first count was proper.

### THE SECOND COUNT

■ This count against all defendants is based on the same averments as the first count but charges a violation of Section 14(a) of the 1934 Act (15 U.S.C. § 78n(a)). There are no averments, however, that any defendant solicited "any proxy or consent or authorization in respect of any security." Judge Henderson was clearly right in dismissing this second count.

### THE THIRD COUNT

This count is directed only against defendants Brown Inc., Brown and Feuchter. The averments are the same as in the first count but the charge is a violation of Section 15(b) (4) (15 U.S.C. § 78o(b) (4)) and Section 15(c) (1) (15 U.S.C. § 78o(c) (1)) of the 1934 Act.

■ Section 15(b) (4) is directed to conduct of a registered broker or dealer. Brown Inc., Brown and Feuchter are averred to be such. Section 15(b) (4) makes Section 10(b) applicable to registered brokers and dealers, whether the mails or instrumentalities of interstate commerce are used or not. Section 15(c) (1) prohibits fraud by a registered broker or dealer in any use of the mails or instrumentalities of interstate commerce to induce the purchase or sale of any security.

Dismissal of the first count requires for the same reasons that the third count be dismissed.

### THE FOURTH COUNT

■ This count against defendant Towle only is based on the same averments as the first count but relies on diversity jurisdiction.

The charge against Towle is that it "aided and abetted the other defendants." If, as we have found, no claim is stated against "the other defendants," then plainly no claim is stated against the aider and abetter and dismissal of the fourth count was proper.

### THE FIFTH COUNT

■ This count against all defendants is based on state law and rests on the principle of pendent jurisdiction. Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933).

We have found that the federal claims must be dismissed. The Supreme Court in such a situation has instructed (United Mine Workers of America v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966)):

"Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."

Dismissal of the fifth claim was therefore proper.

The order appealed from is affirmed. We do not reach the point pressed by certain appellees that summary judgment should have been directed for defendants on the facts said to have been undisputed.