NORSUL OIL AND MINING, LTD. and Petromin, S.A., Plaintiffs,

v.

TEXACO INC. and Gulf Oil Corporation, Defendants.

No. 69 Civ. 5562.

United States District Court, S. D. New York.

March 3, 1970.

Parr, Doherty, Polk & Sargent, New York City, for plaintiffs; by James C. Sargent, and Jack I. Samet, New York City, of counsel.

Amzy B. Steed, William C. Weitzel, Jr., Wm. Tousley Smith, and Kaye, Scholer, Fierman, Hays & Handler, New York City, for defendant Texaco Inc.; by Milton Handler, New York City, of counsel.

Frederick L. Scofield, Malcolm C. Pfautz, New York City, for defendant Gulf Oil Corporation.

## OPINION

POLLACK, District Judge.

The defendants seek a dismissal of the First and Second Claims of the complaint pursuant to Rule 12(b) (6) of the Federal Rules of Civil Procedure on the ground that they fail to state a claim upon which relief can be granted.

These counts purport to state claims under Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), and Securities Exchange Commission Rule 10b–5, 17 C.F.R. § 240.106–5.

It is clear from the face of the complaint that the plaintiffs are neither purchasers nor sellers of securities. It is on this narrow but well substantiated ground alone that defendants seek the relief requested.

The complaint alleges that plaintiff "Norsul" (Norsul Oil and Mining, Ltd.) is a Canadian publicly held corporation with approximately 3,400,000 shares of common stock outstanding mostly American owned and traded on the Calgary Stock Exchange and over-the-counter in New York and elsewhere. The co-plaintiff "Petromin" (Petromin, S.A.) is 70% owned by Norsul and is an Ecuador corporation engaged in phases of the oil and gas business.

In 1961 Petromin acquired, from the government of Ecuador, an oil concession known as the "Coca Concession" in a designated area of approximately 1,606,000 acres in Ecuador. Petromin, in 1965 and 1966, assigned its rights in the concession to subsidiaries of defendants Gulf and Texaco for consideration which included a 2% gross overriding royalty on all oil removed from the Coca Concession.

In January, 1969, Texaco struck oil in a well, Shushufindi No. 1, which it had drilled on acreage in Ecuador. The find was announced by Texaco as a producer of more than 5,000 barrels of high quality oil per day on a ¼ inch choke.

Shortly thereafter Norsul advised its stockholders by telegram and American news media of the completion of the well and that it was on the Coca Concession

1244

in which Norsul had an interest through Petromin's royalty agreement.

Immediately thereafter, the United States Securities and Exchange Commission initiated an investigation and was advised by Texaco that Shushufindi No. 1 was not on the Coca Concession, but was north of it on property in which the plaintiffs had no interest.

The SEC then suspended over-the-counter trading in Norsul stock and about the same time the Securities Commission of the Province of Alberta suspended trading on the Calgary Stock Exchange.

The SEC then brought suit in this Court, 69 Civil 3374, against Norsul and its managing director alleging, the sale of unregistered stock of Norsul from February 1963 to 1969; and fraud in the sale of securities by untrue statements relating to discovery of oil on property in which Norsul allegedly had an interest, the Shushufindi oil well, and an overstatement of Norsul's relationship with Gulf and Texaco, two internationally known oil companies. The Commission demanded a preliminary and permanent injunction against the defendants in that case.

On October 7, 1969 a final judgment was entered in this Court, on Norsul's consent, permanently enjoining it from publicly offering its stock until effective registration thereof and enjoining the corporation and its officers from fraud in the sale or purchase of Norsul stock including misstatements in respect of discovery of oil on its property, the company's financial condition, the properties and leases owned by it and its relationship with internationally known oil companies. Norsul's consent to be enjoined did not admit any of the allegations of SEC's complaint or any violation of law. Proceedings are still in progress before the Alberta Securities Commission with a view to lifting the trading ban on Norsul stock on the Calgary Stock Exchange.

The proceedings in Court and before the two Securities Commissions received substantial publicity in American and Canadian media.

Meanwhile, Texaco receded from its previous unequivocal statement that Shushufindi No. 1 was not on the Coca Concession, in a letter to Norsul. Texaco took the position that the well was north of the Coca Concession when drilled, but might be presently on the concession by reason of changes in boundaries forced by the Government of Ecuador. On October 16, 1969 Texaco stated as its opinion, that Shushufindi No. 1 is on Coca, but that the margin of error inherent in astronomical observation renders it impossible to say at this time precisely where the actual physical well location is in respect of the new line. Plaintiffs allege that Texaco always knew that Shushufindi No. 1 was on the Coca Concession and that its conduct and the proceedings to which plaintiffs have been subjected drove the Norsul stock down from $9 to $3 per share and caused Norsul stockholders to sell their stock at less than true value.

The plaintiffs here seek a declaration that Shushufindi No. 1 is on the Coca Concession; that Texaco and Gulf will become obligated to Petromin for the 2% overriding royaly; and that plaintiffs have been damaged by the conduct of Texaco which plaintiffs charge as a violation of Section 10(b) and Rule 10b–5.

Norsul defines the basis of its damage claim as (a) an inability to protect its shareholders and advise them of the truth in respect of Shushufindi No. 1, and (b) an inability to raise necessary funds for its business purposes through sale of its shares or issuance of stock options at prices commensurate with their true value.

Norsul recognizes the authority of the very recent decision in Iroquois Industries, Inc. v. Syracuse China Corp., 417 F.2d 963 (2d Cir. 1969) which flatly held that:

The rule laid down in *Birnbaum* (v. Newport Steel Corp., 193 F.2d 461, 2d Cir., cert. denied, 343 U.S. 956, 72 S. Ct. 1051, 96 L.Ed. 1356) is that a civil

action under Section 10(b) of the 1934 Act (15 U.S.C. § 78j(b)) may be maintained only by a purchaser or seller of securities. We find no reason to deviate from that rule in the present case.

Plaintiffs urge that "Here, however, unlike *Iroquois*, in which there were no completed purchases or sales, there were innumerable purchases and sales affecting a broad range of market conditions for a publicly traded security". Norsul further argues that Texaco's allegedly false statement to the SEC is similar to the news release of which the plaintiff complained in Securities and Exchange Commission v. Texas Gulf Sulphur Company, 401 F.2d 833, 840, 862 (2d Cir. 1969). Plaintiffs point to the language in that case which holds that Rule 10b–5 is violated whenever assertions are made in a manner reasonably calculated to influence the investing public if such assertions are false or misleading.

■ It plainly appears that the plaintiffs are not within the class of persons intended to be protected by the statute against the harm said to have been caused to Norsul by Texaco's alleged misstatement to the SEC as to the location and ownership of an oil well. Texaco did not make any false statement claimed to have affected the price of its securities or in connection with a purchase or sale of Texaco stock. Texaco's statement was made to an administrative agency in the course of its administrative investigation of public statements by another, and was not made publicly or for publication. The statement was not made to a medium designed to reach the public and investors. What the SEC did with the statement was a matter of its choice.

■ There is nothing in the legislative history of the statute or the decided cases under Section 10(b) and Rule 10b–5 which supports the notion that where a cloud is cast on its assets the inability to finance a company by sales of its treasury stock or options thereon is a "connection with a purchase or sale of securities" which could be redressed under the federal Act here being considered. Nor has any case gone so far as to suggest that a market drop in the price of a company's shares following a fraudulent challenge to its asset or earnings position, is of itself a basis on which the corporation may invoke the federal securities laws on a theory that such a challenge is the "connection" with a purchase or sale contemplated by the Act. A corporation in such circumstances is not within the class intended to be protected by this statute.

■ Many disputed acts or transactions daily affect market price and trading in a corporation's securities. Labelling such acts or transactions as fraudulent does not serve to furnish the key to the federal court for violation of federal securities laws. The statute requires a "connection" with a purchase or sale and not merely a financial consequence of a fraudulent statement.

Whether this case be viewed from the settled law in this Circuit * that the plaintiffs lack standing to sue because neither is a defrauded purchaser or seller (*Iroquois* and *Birnbaum, cit. supra*) or whether the case is considered from the broader viewpoint of whether the federal securities laws were intended to protect a corporation from fraudulent aspersions on its assets, the First and Second Claims of the complaint are insufficient as statements on which relief can be granted. This case falls within the class of "unique, esoteric and implausible legal theories" which strain the purposes of the federal securities laws. See, Christophides v. Porco, 289 F.Supp. 403 at 406 (S.D.N.Y.1968).

There is no just reason for delay in the entry of final judgment as to these claims and the entry of judgment thereon is hereby directed. Rule 54(b), Fed. R.Civ.P.

So ordered.

---

* But cf. Kahan v. Rosenstiel, 424 F.2d 161 (3rd Cir. 2/20/70).