380 F.Supp. 549 (1974)
Allan MOLASKY, Individually and as Trustee for the Benefit of Mark Molasky, u/t/a William Molasky, dated May 1, 1956, and as Trustee for the Benefit of Marti Ellen Rose, u/t/a William Molasky, dated May 1, 1956, et al., Plaintiffs,
v.
Henry GARFINKLE et al., Defendants.
No. 73 Civil 3423.
United States District Court, S. D. New York.
July 24, 1974.
*550 Silberfeld, Danziger & Bangser, New York City, for plaintiffs.
Cahill Gordon & Reindel, New York City, for defendant Peat, Marwick, Mitchell & Co.; William E. Hegarty, Roger S. Fine, New York City, of counsel.

OPINION
EDWARD WEINFELD, District Judge.
Plaintiffs, individually and in a representative capacity (hereafter "Molaskys"), have, for more than ten years, owned and continue to own shares of common stock in Ancorp National Services, Inc. ("Ancorp"), purchased at an average price of $15 per share. On March 15, 1973, trading in Ancorp common shares was halted on the New York Stock Exchange, and on March 20, 1973, Ancorp filed a petition for arrangement under Chapter XI of the Bankruptcy Act. Plaintiffs allege that as a result they have been unable to sell their shares, since there is no real or active market for them. The first cause of action in general alleges that from January 1970 until trading was halted, all the defendants, except Peat, Marwick, Mitchell & Co., conspired to and did fraudulently manipulate the market in Ancorp common and induced the Molaskys "to refrain from effectuating their announced intention to sell" their shares in the open market, in violation of sections 10(b)[1] and 13(e)(1)[2] of the Securities Exchange Act, and rule 10b-5[3] promulgated thereunder.
Count II, wherein Peat, Marwick, Mitchell & Co., a partnership ("Peat, Marwick"), is named with the other defendants, charges that it joined the conspiracy alleged in the first count; specifically, that its partners having held themselves out as independent public accountants and auditors, it prepared or reviewed certain financial statements and interim reports of Ancorp that were materially misleading and upon which the Molaskys relied "in evaluating their investment decision to refrain from selling their Ancorp common stock in the *551 open market, or otherwise." Plaintiffs charge that such conduct violated section 17(a) of the Securities Act of 1933,[4] section 10(b) of the 1934 Act, and rule 10b-5.
Count III, directed only against Peat, Marwick, asserts a common law claim, charging it with gross negligence and alleging that had the Molaskys known the facts which Peat, Marwick failed and omitted to disclose, they would not have refrained from carrying out their announced intention of selling their shares in the open market. This third count is grounded on diversity jurisdiction and pendent jurisdiction.
Peat, Marwick now moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss count II for failure to state a claim upon which relief can be granted. What sticks out clearly is that the Molaskys have not sold their shares, which they acquired more than ten years ago. Thus, at the threshhold they face Birnbaum v. Newport Steel Co.[5] and its progeny, which hold that a cause of action under section 10(b) of the 1934 Act or rule 10b-5 requires that a plaintiff be either a defrauded purchaser or a defrauded seller of securities.
While the continued vitality of Birnbaum has been questioned[6] and its holding criticized,[7] and indeed the Seventh Circuit Court of Appeals has looked the other way,[8] our Court of Appeals, despite repeated urgings to overrule Birnbaum, adheres to its holding, and it remains the rule in this circuit.[9] The court has explained its adherence thereto as reflecting both congressional policy in enacting section 10(b) and that of the SEC in adopting rule 10b-5, and has emphasized that it is not the court's function to extend section 10(b) to transactions not intended to be covered by Congress.[10]
Plaintiffs, recognizing the continuing force of Birnbaum, seek to defeat the motion to dismiss by reliance upon such cases as Vine v. Beneficial Finance Co.[11] and A. T. Brod & Co. v. Perlow,[12] which purportedly "relaxed" the Birnbaum rule. But those cases are inapplicable and give no support to plaintiffs' position, since in the former it was found *552 that the plaintiff was a "forced" seller, and in the latter a broker who was defrauded was the purchaser of the shares. Thus in each instance plaintiff was either a purchaser or a seller of securities in connection with which fraud was practiced, and therefore came within the terms of the Birnbaum holding.
So, too, plaintiffs' reliance upon Stockwell v. Reynolds & Co.[13] is misplaced. In that case, plaintiffs alleged that they had intended to sell their shares in a certain company, but were persuaded not to by representations made by the defendant; when, however, they subsequently learned of the falsity of the representations, they sold their stock at a loss. The court held that Birnbaum was not a bar, as plaintiffs were sellers of stock. The only issue was whether the sales were "in connection with" the alleged fraud, and the court, reading that requirement liberally, held they were and that plaintiffs were entitled to maintain the action under rule 10b-5. Assuming arguendo that the Stockwell decision is correct, it does not aid plaintiffs here, since even after the discovery of the alleged fraud they have retained their stock; they are not sellers, as were the plaintiffs in Stockwell.
Plaintiffs' contention that they have not been able to sell since learning of the fraud because trading in Ancorp common stock has been halted on the New York Stock Exchange and a Chapter XI arrangement has been filed, does not change their situation. Essentially, they argue that the very fraud of the defendants which has damaged them at the same time has destroyed the marketability of their shares, thereby preventing them from being sellers, even "forced" sellers. Yet in Iroquois Industries, Inc. v. Syracuse China Corp.,[14] where our Court of Appeals reaffirmed the Birnbaum rule and found no 10b-5 liability, the plaintiff was prevented from becoming a purchaser by the fraudulent acts of the defendant. As the court there noted:
"That the conduct averred in any given case may be reprehensible does not mean that a federal remedy must be furnished by judges. The remedy in many cases may be found in the state courts . . . ."[15]
Moreover, the fact that the company is in Chapter XI does not mean that the shares are not marketable. An arrangement thereunder does not affect the equity owner's interest.[16] The fact that the value of the shares may be depreciated or that they are not immediately marketable does not give the plaintiffs status as buyers or sellers of the shares.
Similarly, section 17(a) protects only defrauded purchasers of securities,[17] which none of the plaintiffs were during any relevant period. Indeed, plaintiffs do not appear to challenge Peat, Marwick on this point. The motion to dismiss the second cause of action is granted.
*553 The foregoing disposition necessarily requires granting the defendant's further motion to dismiss for lack of subject matter jurisdiction the third count of the complaint, which alleges common law claims of negligence and is grounded on both "pendent"[18] and diversity jurisdiction. Dismissal of count II removes pendent jurisdiction under the rule announced by the Supreme Court in United Mine Workers v. Gibbs.[19] Further, it is undisputed that a number of Peat, Marwick partners are citizens of Missouri, as are the plaintiffs, which defeats diversity jurisdiction since the citizenship of the partnership for diversity purposes is that of each partner.[20] However, plaintiffs request that they "be granted leave to add as parties defendant those partners of PMM [Peat, Marwick] involved in the preparation of the reports alleged, who are domiciled outside the State of Missouri . . . ." Plaintiffs have not articulated how adding partners "who are domiciled outside the State of Missouri" would solve their diversity jurisdiction dilemma, since diversity must be complete.[21] If they intend, as they intimate, to name as defendants only those individual partners allegedly involved in the preparation of the reports, whose citizenship differs from plaintiffs, and to omit the Missouri partners, they are free to do so in an appropriate action. There is no reason to allow the third count to be used as a vehicle for that purpose, since the action was commenced against and names the partnership as the defendant that allegedly committed the acts upon which the claim is predicated. The motion to dismiss count III is also granted.
NOTES
[1] 15 U.S.C. § 78j(b) (1970).
[2] 15 U.S.C. § 78m(e)(1) (1970).
[3] 17 C.F.R. § 240.10b-5 (1973).
[4] 15 U.S.C. § 77q(a) (1970).
[5] 193 F.2d 461 (2d Cir.), cert. denied, 343 U.S. 956, 72 S.Ct. 1051, 93 L.Ed. 1356 (1952).
[6] Entel v. Allen, 270 F.Supp. 60, 69-70 (S. D.N.Y.1967).
[7] See, e. g., Leech, Transactions in Corporate Control, 104 U.Pa.L.Rev. 725, 832-35 (1956); Lowenfels, The Demise of the Birnbaum Doctrine: A New Era for Rule 10b-5, 54 Va.L.Rev. 268, 275-77 (1968).
[8] Eason v. General Motors Acceptance Corp., 490 F.2d 654 (7th Cir. 1973).
[9] See Haberman v. Murchison, 468 F.2d 1305, 1311-1313 (2d Cir. 1972); GAF Corp. v. Milstein, 453 F.2d 709, 721 (2d Cir. 1971), cert. denied, 406 U.S. 910, 92 S.Ct. 1610, 31 L.Ed.2d 821 (1972); Iroquois Industries, Inc. v. Syracuse China Corp., 417 F.2d 963, 967-970 (2d Cir. 1969), cert. denied, 399 U.S. 909, 90 S.Ct. 2199, 26 L.Ed.2d 561 (1970); Greenstein v. Paul, 400 F.2d 580, 581 (2d Cir. 1968); cf. International Controls Corp. v. Vesco, 490 F.2d 1334, 1346 n. 16 (2d Cir. 1974); Mutual Shares Corp. v. Genesco, Inc., 384 F.2d 540, 546 (2d Cir. 1967). See also Sargent v. Genesco, Inc., 492 F.2d 750, 762-764 (5th Cir. 1974); VI L. Loss, Securities Regulation 3617-18 (1969).
[10] See Iroquois Industries, Inc. v. Syracuse China Corp., 417 F.2d 963, 969 (2d Cir. 1969), cert. denied, 399 U.S. 909, 90 S.Ct. 2199, 26 L.Ed.2d 561 (1970).
[11] 374 F.2d 627 (2d Cir.), cert. denied, 389 U.S. 970, 88 S.Ct. 463, 19 L.Ed.2d 460 (1967); see Dudley v. Southeastern Factor & Finance Corp., 446 F.2d 303 (5th Cir.), cert. denied, 404 U.S. 858, 92 S.Ct. 109, 30 L.Ed.2d 101 (1971); Crane Co. v. Westinghouse Air Brake Co., 419 F.2d 787, 798 (2d Cir. 1969), cert. denied, 400 U.S. 822, 91 S. Ct. 41, 27 L.Ed.2d 50 (1970); Feldberg v. O'Connell, 338 F.Supp. 744 (D.Mass.1972).
[12] 375 F.2d 393 (2d Cir. 1967).
[13] 252 F.Supp. 215 (S.D.N.Y.1965).
[14] 417 F.2d 963 (2d Cir. 1969), cert. denied, 399 U.S. 909, 90 S.Ct. 2199, 26 L.Ed.2d 561 (1970).
[15] Id. at 969.
[16] See 11 U.S.C. § 706(1) (1970); SEC v. United States Realty & Improvement Co., 310 U.S. 434, 60 S.Ct. 1044, 84 L.Ed. 1293 (1940). See also 11 U.S.C. § 575 (1970).
[17] See Iroquois Industries, Inc. v. Syracuse China Corp., 417 F.2d 963, 966 (2d Cir. 1969), cert. denied, 399 U.S. 909, 90 S.Ct. 2199, 26 L.Ed.2d 561 (1970); Superintendent of Insurance v. Bankers Life & Cas. Co., 430 F.2d 355, 359 (2d Cir. 1970), rev'd on other grounds, 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971); Birnbaum v. Newport Steel Corp., 193 F.2d 461, 463 (2d Cir.), cert. denied, 343 U.S. 956, 72 S.Ct. 1051, 93 L.Ed. 1356 (1952); Emco Porcelain Enamel Co. v. Wolfe, [1970-1971 Transfer Binder] CCH Fed.Sec.L.Rep. ¶ 93,143 (1971).
[18] See Hurn v. Oursler, 289 U.S. 238, 53 S. Ct. 586, 77 L.Ed. 1148 (1933).
[19] 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L. Ed.2d 218 (1966); see Kavit v. A. L. Stamm & Co., 491 F.2d 1176, 1179 (2d Cir. 1974).
[20] Great Southern Fire Proof Hotel Co. v. Jones, 177 U.S. 449, 20 S.Ct. 690, 44 L.Ed. 842 (1900); Woodward v. D. H. Overmyer Co., 428 F.2d 880, 883 (2d Cir. 1970), cert. denied, 400 U.S. 993, 91 S.Ct. 460, 27 L.Ed. 2d 441 (1971); Eastern Metals Corp. v. Martin, 191 F.Supp. 245, 249-250 (S.D.N.Y. 1960).
[21] Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806).