**Napoleon A. MARCOU**

v.

**FEDERAL TRUST COMPANY et al.**

Supreme Judicial Court of Maine.

Aug. 14, 1970.

Louis Rene Marcou, Waterville, for plaintiff.

Weeks, Hutchins, Frye & Welch, by Miles P. Frye, Waterville, for Federal Trust Co.

Eaton, Peabody, Bradford & Veague, by Thomas M. Brown, Bangor, for Merrill Bankshares Co. and Silver St. Trust Co.

Before WILLIAMSON, C. J., and WEBBER, DUFRESNE, WEATHERBEE, and POMEROY, JJ.

WILLIAMSON, Chief Justice.

This is an appeal by the plaintiff Marcou from denial of his petition for declaratory judgment and injunctive relief. An appeal by the defendants on the ground of error in taking jurisdiction of the cause was not prosecuted.

The statement of evidence and proceedings settled and approved by the Court below under Rule 74(n), M.R.Civ.P. reads in part:

"Plaintiff [Marcou] has brought a declaratory judgment action in which he attempts to prevent the merger of Defendant Federal Trust Company (Federal), of which he is a stockholder, with Defendant Silver Street Trust Company (Silver), a subsidiary of Defendant Merrill Bankshares Company (Bankshares), and thereby defeat the plan of reorganization of Federal, alleging that Silver is not a properly chartered banking corporation.

"Federal undertook to negotiate with Bankshares a possible plan of reorganization under which Bankshares would acquire 100% stock ownership in Federal on the basis of an exchange of 1.2 shares of Bankshares for each share of Federal outstanding. This plan contemplated the formation of Silver as a trust company pursuant to 9 M.R.S.A. § 991, et seq.

"It was anticipated that the stockholders of Federal, pursuant to 9 M.R.S.A. § 1221, et seq., would vote on whether to approve a merger of Federal and Silver, as well as the other aspects of the plan of reorganization under consideration by Federal and Bankshares.

"9 M.R.S.A. § 1221, et seq. required an affirmative vote of at least two-thirds of the outstanding stock of Federal. As the plan of reorganization was finally conceived, it was made a condition to consummation of the exchange of stock that the Board of Directors of Federal, following the vote of its stockholders, must make a determination that the holders of not less than eighty per cent (80%) of the outstanding stock of Federal will participate in the reorganization. The receipt of Bankshare's stock by Federal stockholders is anticipated to

be tax-free since the transaction qualifies as a reorganization under 26 U.S.C. § 368(a) (1) (B) of the Internal Revenue Code (Rev.Rule 67–448) and by virtue of Rule 133 of the federal Securities and Exchange Commission the stock is exempt from the registration requirements of the Securities Act of 1933.

"Plaintiff was a director and is minority stockholder of Federal, owning 1,043 of the 92,004 shares outstanding. As a director of Federal, Plaintiff demanded that the Board of Directors of Federal abandon its proposed plan of reorganization. Federal and Bankshares went forward with the proposed plan over Plaintiff's objections.

"Silver was incorporated by Certificate of Incorporation dated December 24, 1969 issued by the Secretary of State. One of the conditions preceding the incorporation of Silver was the issuance of a Certificate of Public Convenience and Advantage by the Bank Commissioner which certificate was issued to Silver on December 23, 1969. The Bank Commissioner prepared a memorandum regarding the issuance of the Certificate of Public Convenience and Advantage. No appeal was taken from this certification that public convenience and advantage would be promoted by the establishment of Silver. Following the incorporation of Silver, Federal, Bankshares and Silver entered into an Agreement and Plan of Reorganization (Plan), dated December 24, 1969, which provided for the reorganization of Federal.

"On December 29, 1969 Federal mailed its management's proxy statement to all stockholders and gave notice of a special meeting of stockholders to be held on January 21, 1970 for the purpose of voting on the Plan. On January 13, 1970, Plaintiff mailed to said stockholders a proxy statement in opposition to the Plan. On January 20, 1970 Plaintiff made a written demand on the Board of Directors of Federal to abandon the Plan. At the special meeting of stockholders of Federal held on January 21, 1970, 87.7% of the outstanding shares were voted in favor of the plan of reorganization, 5.7% of the outstanding shares opposed and 6.6% of the outstanding shares were not voted.

"On January 21, 1970, just prior to the stockholders' meeting, Plaintiff brought a complaint for declaratory judgment with prayer for injunctive relief against Federal to which Federal on February 11, 1970 filed a motion to dismiss and a motion that the court order Plaintiff to join Bankshares and Silver as defendants.

"Subsequently, Bankshares and Silver were joined as parties defendant and the matter was set for oral argument before the court. Whereupon Bankshares and Silver promptly filed a motion to dismiss similar to that of Federal, and Federal filed an affirmative defense and an answer similar to those of Bankshares and Silver.

"At a subsequent conference it was agreed that Plaintiff's complaint was incomplete as a request for declaratory judgment as the prayer for relief contained only prayers for temporary and permanent injunctions without requesting a declaration of rights. It was further agreed that the Plaintiff would be allowed to amend the prayers for relief to include a request for a declaration that the contract providing for the merger of Federal and Silver was illegal and contrary to Title 9 M.R.S.A. § 1222 and therefore ultra vires as to Federal Trust for any one of the three reasons set forth in Plaintiff's motion to amend prayer of complaint." [The certificate and memorandum of the Bank Commissioner and the Proxy statement with the Plan are also included in the record].

"The following facts were also agreed upon:

"(1) Plaintiff attempted to dissuade the Board of Directors of Federal Trust Company from approving ahe Agreement and Plan of Reorganization and solicited the proxies of other shareholders for the purpose of defeating approval of the Plan at the special meeting of stockholders of Federal Trust Company held on January 21, 1970. Plaintiff voted all proxies received by him and his own stock against the Plan and reviewed all proxies submitted by all stockholders."

*     *     *     *     *     *

"(3) Plaintiff filed written and made oral argument to the Bank Commissioner opposing the issuance of a Certificate of Public Convenience and Advantage to Silver Street Trust Company, and defendants. Federal Trust Company and Merrill Bankshares Company, filed written and made oral argument to the Bank Commissioner in support of the issuance of said Certificate."

In brief, the Plan called for the acquisition by Bankshares of all of the capital stock of Federal. To accomplish this purpose it was proposed: (1) that Silver, wholly owned by Bankshares, be created as a bank; (2) that Silver then merge with Federal, with Federal the survivor; (3) that Bankshares cancel its shares in Silver; (4) that Federal shares be exchanged for Bankshares at a ratio of 1 to 1.2; and (5) that dissenting Federal stockholders, such as Marcou, receive the value of their stock on appraisal under the statute. Silver, under the plan, would have a short life—long enough only to merge with Federal. Marcou speaks of Silver as a "phantom bank"; the defendants, of Silver as an "interim bank".

Marcou seeks to continue his minority interest in Federal, and attacks the reorganization and merger under which he would be forced to take shares of Bankshares or the appraisal value of his shares as a dissenter.

All references to the statutes unless otherwise noted are to sections of 9 M.R.S.A.

In the Bank's Commissioner's memorandum relating to the certificate of public convenience and advantage, we find the following findings and conclusions of particular interest to us.

"It appears that the proposed Silver Street Trust Company is not to be operated as a new commercial bank accepting deposits, making loans and transacting business on a continuing basis as an ordinary commercial bank. Silver Street is to be used only as vehicle for the transfer of Federal Trust Company ownership to Merrill Bankshares. Therefore public convenience and advantage 'flows through' Silver Street to Federal Trust. It is on this basis that the decision of public convenience and advantage has to be determined."

*     *     *     *     *     *

"Public convenience and advantage for the organization of Silver Street Trust Company.

"1. *Financial history and condition of the financial institution.*

"(a) The proposed capital of Silver Street is $100,000, which is an adequate base for borrowing a sufficient amount to complete the proposed transaction of transferring ownership of Federal Trust Company to Merrill Bankshares.

"(b) Financial history and condition of the financial institution (Federal Trust) has been satisfactory until approximately a year or two ago. The capable and experienced president of Federal, Frederick R.

Knauff resigned his position in the summer of 1968 and another president, Robert J. Dehais was elected to replace him. The condition of Federal deteriorated. There was dissention on the board of directors, public impressions of the bank declined and Deshais resigned and left town without previous notice.

"2. *Future earnings prospects*

"(a) Future earnings prospects of Silver Street nil.

"(b) Federal Trust will be the surviving bank owned by Merrill Bankshares after proposed transactions are consumated. The future earnings prospects of Federal should then be bright. As a member of Merrill Bankshares, Federal should soon have a computerized operation which is now lacking and is greatly needed. Trust Department experience with capable personnel will be cooperating with Federal to improve their effectiveness. Merrill's department of management will be able to aid Federal in the interim, and then with their wide experience and contacts with bank officers will be able to aid in securing a capable new president and in depth management. This would then put Federal in a solid position for future earnings prospects.

"3. *The general character of its management.*

"(a) Silver Street is proposed to be only temporary and the duties of its officers will be only temporary.

"(b) A major reason why a certificate of public convenience and advantage should be issued to Silver Street is to enable Federal to become a member of Merrill Bankshares where concerted study and cooperation of several experienced bank officers with wide contacts and people experienced in the broad aspects of personnel work can improve the depth in management and officers complement of Federal which will effectively increase the public confidence in the Federal official family. Mr. Frederick R. Knauff is capable but is only president on a temporary basis.

"4. *The convenience and needs of the community it serves or proposes to serve.*

"(a) Silver Street as an interim bank can only meet the convenience and needs of the community as a vehicle to achieve this for Federal Trust to become a member of Merrill Bankshares.

"(b) Federal Trust when it becomes a member of the strongly managed Merrill Bankshares group will be able to increase its effectiveness in the communities it now serves."

\*   \*   \*   \*   \*   \*

"5. *The effect of the proposed transaction on competition.*

"(a) Here again for the benefits derived are use of the "vehicle" (Silver Street) which will enable Federal Trust Company to be more effective in the area."

\*   \*   \*   \*   \*   \*

"(b) The preponderance of evidence indicates that issuing a certificate of public convenience and advantage to Silver Street Trust Company would be in the public interest. This decision is made after having opportunity to hear and study the respective arguments of a few minority shareholders represented

by the law firm of Marcou and Marcou, Waterville, Maine, who have called at the Commissioners office at least three times and have presented a written statement and oral arguments in opposition to the forming of the proposed Trust Company. Representatives of Marden, Dubord, Bernier and Chandler have called at the Commissioner's office and they represent a substantial number of shares owned by stockholders favorable to the formation of the Silver Street Trust Company."

The public convenience and advantage, which the Bank Commissioner found, "flows through" from Silver to Federal is defined in the statutes as follows: " 'Public convenience and advantage' means those factors which bear on the public interest in financial institutions which include the financial history and condition of the financial institution, the adequacy of its capital structure, its future earnings prospects, the general character of its management, the convenience and needs of the community it serves or proposes to serve and the effect of the proposed transaction on competition." 9 M.R.S.A. § 222, ¶ 7.

■ The Plan, which includes the merger of Federal and Silver and the acquisition by Bankshares of the entire capital stock of the surviving Federal, in our opinion does not meet the requirements of the statutes. We sustain Marcou's appeal.

The flaw in the Plan to which we direct our attention and which makes it unnecessary to consider other claims of error is simply stated. The Plan requires the vote of at least two-thirds of the outstanding voting stock of Federal for its approval. There are provisions with which we are not interested for abandonment of the Plan under certain conditions. After the completion of the proposed merger Federal would remain the same except for the

addition of the Silver capital and payment to dissenting stockholders. The entire capital stock of Silver, owned by Bankshares, would be cancelled. The Plan provides that "The Corporate Charter and the By-Laws of Federal Trust shall remain in effect, the Directors and officers of Federal Trust shall remain in office, and the offices, banking facilities and the business of Federal Trust shall continue without interruption." Following the merger Federal would reimburse Bankshares the capital supplied Silver "by a special dividend to Bankshares, as the sole stockholder of the surviving banking corporation (Federal), in the amount of $160,000."

The objecting stockholder would be left only the right to receive the appraised value of his shares. In short, a goal, or a purpose, of the Federal-Silver merger would be to force out any minority interest in Federal. Federal would live, but with new owners.

Our statutes on bank mergers provide for "a merger agreement which shall contain: * * * Provisions governing the manner of converting the shares of the merging banks into shares of the resulting trust company; * * *" 9 M.R.S.A. § 1225, ¶ 3.

The statute in Section 1225, ¶ 6 also calls for approval of the agreement by the Bank Commissioner "if it appears that the resulting trust company meets the requirements of state law as to the formation of a new trust company, provides an adequate capital structure including surplus in relation to the deposit liabilities of the resulting trust company and its other activities which are to continue or are to be undertaken, is fair, and the merger is not contrary to the public interest."

A new trust company requires "a certificate of public convenience and advantage" from the Bank Commissioner. Section 993. To be effective, a merger must be approved by ⅔ of the outstanding vot-

ing stock of each merging trust company. Section 1226.

For our purposes we will assume without deciding that Silver is a duly organized trust company and thus Silver and Federal are capable of merging or consolidating into a resulting trust company under Section 1222 et seq. Section 1225, ¶ 3, plainly provides that the shares of merging banks must be converted into shares of the resulting trust company. For no more than the twinkling of an eye, it may be said that this provision of the statute would be met under the Plan. In the merger, Federal shares would become the only shares of the resulting Federal upon the cancellation of the shares of Silver.

Thus on the carrying out of the Plan Bankshares would emerge as the owner of 100% of the shares of Federal. All Federal stockholders, whether or not willing to exchange Federal shares for shares of Bankshares, would cease to have any interest in Federal.

In all fairness it may be said that the proposed merger of Federal and Silver and the acquisition of the Federal capital stock by Bankshares would form one transaction. There is no intention apparent on the record before us that the Plan would be met by the acquisition by Bankshares of, let us say, 87% of the Federal stock willing to go forward with the proposed exchange, leaving an outstanding 13% minority interest in Federal not gathered in by Bankshares.

We need not speculate on why Bankshares, a banking holding company and not itself a bank, chose not to exchange its shares for shares of the present Federal, but to take the merger route with Silver, the phantom or interim bank. An important purpose of the Plan for the proposed merger obviously is to obtain for Bankshares 100% of the Federal stock by the elimination of the unwilling Federal stockholders by the device of payment for their shares under the dissenting stockholder's statute. Section 1230.

The Plan is a package containing a merger and an exchange for Bankshares. It does not meet the conditions of the merger statute. Federal may not under the statute compel its stockholders to convert their shares into shares of a company not a trust company resulting from the proposed merger. This, however, is precisely what is proposed in the Plan. In short, Marcou, who objects to the Plan, would be forced out of the resulting or surviving Federal. He is offered not shares in the merged bank, or Federal, but shares in Bankshares.

The stockholder in trust company A in a merger with trust company B is entitled to the conversion of his shares into shares of the resulting trust company. He cannot be compelled to take stock in X company, or cash as a dissenting stockholder. A merger, as here proposed, of a live bank with a phantom bank, may not be a vehicle to compel a stockholder to give up his statutory right to an interest in the stock of the resulting bank.

In this view of the case we need not and we do not consider, or pass upon in any way, other issues raised relating to the creation and existence of Silver, the phantom or interim bank, to the deprivation of preemptive rights in Federal stock or other issues asserted by Marcou.

The entry will be:

Appeal sustained.

Remanded for entry of judgment consistent with this opinion.

MARDEN, J., did not sit.